1  JULIE A. MERSCH, ESQ.
   Nevada Bar No. 004695
2  LAW OFFICE OF JULIE A. MERSCH
   701 S. 7ᵗʰ Street
3  Las Vegas, NV  89101
   (702) 387-5868
4  Fax: (702) 387-0109
   jam@merschlaw.com
5   Attorney for Plaintiff

6              **UNITED STATES DISTRICT COURT**

7                 **DISTRICT OF NEVADA**

8  ELLEN VIOLA,                    )  CASE NO.:
                                   )
9              Plaintiff,          )
                                   )
10         vs.                     )  **COMPLAINT**
                                   )
11 SUN LIFE ASSURANCE COMPANY OF   )
   CANADA, as Claims Administrator of the )
12 Holland &Hart LLP Long-Term Disability )
   Plan;  DOES I through V inclusive; and )
13 ROES I through V, inclusive,    )
                                   )
14                                 )
               Defendant.          )
15 _____ )

16      Plaintiff ELLEN VIOLA, by and through her attorney, JULIE A. MERSCH, ESQ.,

17 complains and alleges as follows:

18                        **I.**

19            **JURISDICTION AND VENUE**

20      1.      This is an action for declaratory and injunctive relief and disability benefits

21 owed, and arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

22 §1001 et seq.

23      2.      This Court has subject matter jurisdiction under ERISA, 29 U.S.C. §1132(e)(1);

24 and general federal jurisdiction pursuant to 28 U.S.C. §1331.

25      3.      Venue is proper in this district, pursuant to 29 U.S.C. §1132(e)(2).

26                        **II.**

27            **GENERAL ALLEGATIONS**

28      4.      Plaintiff ELLEN VIOLA is, and at all times relevant was, a resident of Clark

County, Nevada; an employee of Holland & Hart; and a qualified participant in the Holland & Hart Long-Term Disability Plan ("subject plan") within the meaning of 29 U.S.C. §1002(7) of ERISA.

5.      At all times relevant, Defendant SUN LIFE ASSURANCE COMPANY OF CANADA (hereinafter "SUN LIFE") was the Claims Administrator for the subject LTD plan. Upon information and belief, SUN LIFE was and is a fiduciary with respect to the subject Plan as that term is defined pursuant to 29 U.S.C. § 1002(21)(A).  Upon information and belief, SUN LIFE funds the subject plans and investigated and made the decision to terminate Plaintiff's long-term disability benefits under the subject Plan.

6.      The standard of review of SUN LIFE's decision to terminate benefits is *de novo.*

### III.

### ALLEGATIONS OF FACT

7.      In July 2012, Plaintiff was hired by Holland & Hart LLC as a paralegal.  On March 20, 2014, VIOLA was injured in a motor vehicle accident ("subject accident") and remained off work after her accident until June 16, 2014 when she returned to her occupation on a part-time basis.  SUN LIFE paid VIOLA "Partial Disability" benefits from approximately June 19, 2014 - February 6, 2015.

8.      Due to her inability to continue working due to the effects of the subject accident, including traumatic brain injury ("TBI") and hemiparesis, VIOLA stopped working completely at Holland & Hart on February 6, 2015. SUN LIFE paid VIOLA "Total Disability" benefits from approximately February 7, 2015 through July 31, 2015.

9.      The duties of a Paralegal required VIOLA, *inter alia*, to review, analyze, and summarize large volumes of documents including medical records; perform legal and factual research; evaluate cases; draft legal pleadings and correspondence; manage case files; and prepare files for trial or hearing including maintenance of exhibits.  A "paralegal" occupation is considered a "light-duty" occupation, and Sun Life ultimately evaluated it as a "light-duty" occupation.

10.     Under the subject plan, "Total Disability" means that "the Employee, because of Injury or Sickness, is unable to perform one or more of the Material and Substantial Duties of his Own Occupation.

11.     VIOLA's date of disability is March 21, 2014. In support of her claim for disability, VIOLA submitted to SUN LIFE, *inter alia*, Attending Physician Statements from internist/neurologist Richard D. Washinsky, M.D. dated 6/25/14; clinical psychologist Donna M. Cook, PhD dated 1/9/15; and a letter from treating neurosurgeon Yevgeniy Khavkin, M.D. dated 1/24/15 (setting forth VIOLA's symptoms as a result of her TBI and his restrictions and limitations as of that date)("first Khavkin letter").

12.     On July 7, 2014, SUN LIFE interviewed VIOLA to obtain her medical history and functional limitations related thereto.

13.     On September 2, 2014, a registered nurse, Julia Matula BSN, RN performed a medical records review and determined that VIOLA "would not have sustained light functional capacity from her date of disability to 7/16/2014" and recommended to SUN LIFE to obtain "office visit notes from Drs. Washinsky and Dixit as well as Desert Canyon Rehab Hospital to assist in determining Ms. Viola's functional capacity from 7/17/2014 onward."

14.     In a Clinical Review Report generated by Margaret O'Connor PhD (neuropsychologist) on March 11, 2015, Dr. O'Connor noted, *inter alia*, that VIOLA's "[a]ttention problems will undermine performance of tasks that require intense focus" but asserted that VIOLA's "other cognitive abilities including memory, problem solving and communication skills are intact" ("O'Connor Report").  Dr. O'Connor stated: ". . . It will be important to find out whether Ms. Viola is driving as this activity is highly dependent on intact attention and it may be the case that her attention has improved since the time of her prior evaluation."  Dr. O'Connor further concluded that VIOLA does not have "significant psychiatric problems that undermine her daily functions."

15.     In a letter dated July 21, 2015, SUN LIFE terminated VIOLA's long-term disability claim retroactive to April 6, 2015 ("subject termination").  In its termination letter, SUN LIFE explained that it had concluded that VIOLA was not totally disabled because, *inter*

*alia*, a) surveillance video demonstrated that VIOLA was capable of driving; and b) she was not under a psychiatrist's care.

16.     Plaintiff was unable to perform one or more of the Material and Substantial duties of her own occupation as of April 6, 2015 due to, *inter alia,* the effects of her TBI on her cognition, attention, and memory, resulting in "Total Disability" as defined under the subject plan.

17.     On or about January 15, 2016, VIOLA appealed the subject termination ("subject appeal"). In the appeal letter, VIOLA provided, *inter alia*, a) an exhaustive review of her medical history after the motor vehicle accident including objective and subjective medical documentation showing traumatic brain injury (from her neurologists, neurosurgeon, and neuropsychologist); b) a detailed analysis of administered treatment modalities and outcomes from her physical, speech and language, and occupational therapists; c) compelling proof from her supervising attorney that VIOLA was unable to perform one or more of the Material and Substantial Duties of her occupation as a paralegal; and d) a review of her subjective reports of disability since the subject accident, all of which supported VIOLA's partial and total disability claim and on which SUN LIFE had ostensibly relied to pay benefits through July 31, 2015.

18.     In the subject appeal, VIOLA also provided additional medical records and a letter dated January 15, 2016 by Dr. Khavkin (neurosurgeon) ("second Khavkin letter") continuing to document the deleterious effects of her TBI on her recent memory and concentration; time management and concentration skills; and auditory and verbal comprehension.  As referenced, VIOLA also provided a compelling Declaration from her supervising attorney, Leslie Nino Piro, Esq., attesting to her first-hand observations of VIOLA at work and her ultimate determination that VIOLA could no longer perform her job duties as a Paralegal.

19.     SUN LIFE did not consider the Piro Declaration or the second Khavkin letter in its appeal review.

20.     On or about April 15, 2016, SUN LIFE denied the subject appeal ("appeal

4

denial letter"). In the appeal denial letter, SUN LIFE relied on a peer review report by psychologist Kristin Fiano, Ph.D. to deny VIOLA's appeal ("Fiano Report"). The Fiano Report purported to interpret neuropsychological testing performed by Dr. Cook as set forth in the Cook Report.  Based on her review of the Cook Report, Dr. Fiano concluded, *inter alia,* that "there are no objective data to document impairment for the time period in question" and "[T]he medical record does not document a psychological condition that would impact functionality."

21.     Although VIOLA rebutted in her appeal letter the basis for the subject termination as set forth in its termination letter (and taken from the O'Connor Report) , e.g.– its "ability to drive" and "lack of appropriate care and treatment by a psychiatrist" arguments --SUN LIFE's appeal denial letter did not acknowledge this rebuttal evidence. Instead, SUN LIFE improperly proffered new reasons in support of its appeal denial, e.g. — that VIOLA had provided *no* objective data to document impairment for "the time period in question" and had not demonstrated a *psychological* condition affecting her ability to function.

22.     In its appeal denial letter, SUN LIFE failed to reconcile the O'Connor and Cook Report determinations of impairment with the determination of "no impairment" set forth in the Fiano Report.

23.     The appeal denial letter advised Plaintiff of her right to bring a civil action under ERISA.

**IV.**

**Claim for Relief: Wrongful Denial of Benefits under ERISA**
**§502(a)(1)(B), 29 U.S.C. §1132 (A)(1)(B)**

24.     Paragraphs 1-23 are incorporated by reference as if fully set forth herein.

25.     Defendant SUN LIFE wrongfully terminated VIOLA's long-term disability benefits in violation of the subject LTD Plan and ERISA regulations for, *inter alia,* the following reasons:

a.     SUN LIFE improperly terminated LTD benefits effective April 6, 2015 because VIOLA had not provided proof of disability from a *psychiatric* condition ("lack of appropriate treatment" reason) even though her

5

medical proof established that her "Partial Disability" and "Total Disability" were the result of a *physical* condition and even though the subject plan did not require VIOLA to prove a particular medical condition but only to prove Disability "because of Injury or Sickness."

b.   Despite clear medical evidence that VIOLA suffered the effects of a TBI causing cognitive impairment and resulting symptoms, SUN LIFE did not have the appropriate professional review her medical proof prior to terminating benefits.

c.   SUN LIFE improperly terminated LTD benefits effective April 6, 2015 because VIOLA could perform activities of daily living, even though SUN LIFE failed to evaluate her ongoing entitlement to benefits under the correct standard, e.g., whether VIOLA could perform one or more of the Material and Substantial Duties of her Own Occupation as a Paralegal. Whether she could drive, shop, or carry objects for a short time period did not satisfy SUN LIFE's obligation to determine whether VIOLA satisfied the definition of "Total Disability."

d.   SUN LIFE improperly terminated LTD benefits effective April 6, 2015 without identifying the cognitive demands of VIOLA's occupation as a Paralegal and by improperly characterizing this occupation as Sedentary.  As a result, SUN LIFE performed an improper and flawed "vocational review" to facilitate benefit termination.

e..   SUN LIFE improperly denied VIOLA's appeal by failing to conduct any in-person evaluation, instead relying on a records review by Dr. Fiano, a psychologist.

f.   SUN LIFE wholly relied on the Fiano Report to deny VIOLA's appeal, even though Dr. Fiano failed to conduct her own neuropsychological testing; was not qualified to rebut the opinions related to cognitive impairment submitted by 1) VIOLA's neurosurgeon in the first and

second Khavkin letter and as supported by her physicians and their medical records; 2) her therapists; and 3) her supervising attorney. Moreover, SUN LIFE allowed Dr. Fiano to seek to consult via telephone Dr. Cook and Dr. Dixit in lieu of more recent providers Dr. Khavkin and Dr. Veerappan.

g.    SUN LIFE improperly relied on the Fiano Report to terminate benefits because the Report does not identify the "time period in question" over which Dr. Fiano offered her opinion; because Dr. Cook's Report provided evidence of impairment, which was disregarded; and because SUN LIFE failed to credit in any meaningful way the first and second Khavkin letters and the objective medical data in support of traumatic brain injury affecting VIOLA's cognitive abilities as stated  (as well her speech and motor skills).

h.    SUN LIFE ignored relevant medical and non-medical information in order to terminate benefits and deny VIOLA's appeal.

i.    Neither the termination letter nor the appeal denial letter properly determined the Material and Substantial Duties of a Paralegal *and* whether VIOLA was precluded from performing "One or More" of those Duties.

j.    In its appeal denial letter, SUN LIFE improperly proffered a new basis for terminating benefits instead of reversing the subject termination upon review of VIOLA's appeal letter, which met and overcame the reasons proffered for denial in the subject termination.

26.    As a result of the foregoing actions and inactions, Defendant failed to conduct a "full and fair" investigation of the subject claim; failed to perform meaningful review, prior to initial termination and appeal denial; and therefore improperly terminated LTD benefits as of April 6, 2015 and improperly affirmed that termination on January 21, 2016.

27.     Based on the foregoing allegations, Plaintiff's ERISA claim should be decided under *de novo* review.

## **PRAYER FOR RELIEF**

28.     Plaintiff ELLEN VIOLA requests that this Court review the termination of LTD benefits under *de novo* review and declare that she is 1) entitled to payment of long-term disability benefits from April 6, 2015 through the present; 2) entitled to payment of interest on all unpaid past LTD benefits; and 3) entitled to payment of all attorney's fees and costs associated with attempting to secure the benefits owed to her pursuant to ERISA §502(g)(1), 29 U.S.C.

DATED this 14th day of June, 2016.

LAW OFFICE OF JULIE A. MERSCH


By:   ___/s/ Julie A. Mersch_____
         JULIE A. MERSCH, ESQ.
         Nevada Bar No. 004695
         701 S. 7th Street
         Las Vegas, Nevada 89101
         Attorney for Plaintiff

W:\VIOLA\PLDGS\COMPLAINT.wpd